IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| WILLIAM LEE ANDERSON II, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 7:14cv00184 |
| | ) | |
| J.L. BROWN, et al., | ) | By:    Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

REPORT AND RECOMMENDATION

William Lee Anderson II, a state prisoner proceeding *pro se*, has filed suit under 42

U.S.C. § 1983 alleging that J.L. Brown and Correctional Officer Oliver violated his rights under

the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Defendants

moved for summary judgment, and Anderson timely responded. Defendants' motion, ECF No.

22, is before me for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). ECF No. 31.

Having considered the parties' pleadings, all supporting materials, and the applicable law,

I respectfully recommend that the presiding District Judge grant the motion because Anderson

has not exhausted his available administrative remedies. That undisputed fact entitles Brown and

Oliver to judgment as a matter of law.

I. Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v.*

*Cotton*, --- U.S. ---, 134 S. Ct. 1861, 1866 (2014) (per curiam). Facts are material when they

"might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). A genuine dispute over a material fact exists if "a reasonable jury

could return a verdict in favor of the nonmoving party." *Kolon Indus., Inc. v. E.I. DuPont de*

*Nemours & Co.*, 748 F.3d 160, 173 (4th Cir. 2014) (citing *Anderson*, 477 U.S. at 248).

1

"The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Appalachian Power Co. v. Arthur*, --- F. Supp. 2d ---, 2014 WL 3900618, at \*6 (W.D. Va. 2014) (Urbanski, J.) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party makes that showing, the nonmoving party must then produce admissible evidence—not mere allegations or denials—establishing the specific material facts genuinely in dispute. *See* Fed. R. Civ. P. 56(c), (e); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wilkins v. Montgomery*, 751 F.3d 214, 220 (4th Cir. 2014). When deciding a summary judgment motion, the court must consider the whole record and draw all reasonable inferences in the light most favorable to the nonmoving party. *Tolan*, --- U.S. ---, 134 S. Ct. at 1866. The court does not weigh evidence, consider credibility, or resolve disputed issues—it decides only whether the record reveals a genuine dispute over material facts. *See id.*

## II. Background

Anderson is an inmate at Augusta Correctional Center ("ACC") in Craigsville, Virginia. Compl. 1, ECF No. 1. He filed this lawsuit against Brown and Oliver on April 8, 2014, alleging that the officers violated his Fourth, Eighth, and Fourteenth Amendment rights. *See* Compl. 1; Compl. Ex. at 1–2, 4–11, ECF No. 1-1. Anderson's claims stem from three alleged events: (1) being placed in segregation and strip searched; (2) being forced to sleep on a top bunk even though he has pelvic pain and panic attacks; and (3) cutting his finger on a metal bed frame. *See generally* Compl. 4; Compl. Ex. at 3–11.

According to the complaint, Anderson requires a bottom bunk to accommodate a painful pelvic injury and severe panic attacks. *See* Compl. 4; Compl. Ex. at 3. Around January 14, 2014, Anderson was reassigned from a bottom bunk in pod A2 to a top bunk in pod B2. *See* Compl. Ex. at 8. When Anderson told Oliver that he "can't climb up and down th[at] bunk," the officer

2

told him to move to another pod. *See* Compl. 4. Once unpacked there, Oliver told Anderson to move again. *See id.* Anderson "asked the officer to let [him] rest" while walking to their third destination. *Id.* Oliver immediately put Anderson in segregation, where he was strip searched and his property was destroyed. *See id.*

Anderson was assigned a top bunk in pod B1 when he was released from segregation eight days later. *See id.* An officer threatened to send him back to segregation if he complained about the assignment. *See id.*; Compl. Ex. at 3. Anderson struggled to climb on and off of his top bunk, which he claims was improperly installed and ill maintained. *See* Compl. Ex. at 3. He also cut his finger on the metal bed frame three times. *See id.* Brown, B1's Unit Manager, refused to transfer him to a bottom bunk even after he cut his finger and fell face-first from the bunk to the floor. *See* Compl Ex. at 5.

Anderson asserts that Oliver violated his Fourth, Eighth, and Fourteenth Amendment rights when Oliver put him in segregation "for no reason" and strip searched him. *See* Compl. Ex. at 4, 8–9, 11. He also contends that being forced to climb on and off a top bunk was cruel and unusual punishment and that Brown was deliberately indifferent to his pelvic pain, panic attacks, and injured finger—all in violation of his Eighth and Fourteenth Amendment rights. *See* Compl. Ex. at 4, 9. Anderson seeks $500,000 in damages and an order directing prison officials to "repair all the bunks" like the one in his cell. Compl. 5. Defendants respond that Anderson did not exhaust his available administrative remedies on any claim before he filed this lawsuit. *See* Def. Br. in Supp. 5–7.

### III. Discussion

The Prison Litigation Reform Act ("PLRA") requires inmates to properly exhaust "such administrative remedies as are available" before filing any federal lawsuit "with respect to prison

conditions." 42 U.S.C. § 1997e(a) (2012); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007);

*Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v.*

*Churner*, 532 U.S. 731, 736–41 (2001). "There is no question that exhaustion is mandatory under

the PLRA," *Jones*, 549 U.S. at 211, and that courts cannot excuse an inmate's failure to exhaust

available remedies "in accordance with the [prison's] applicable procedural rules," *Woodford*,

548 U.S. at 88.

A remedy is "available" when there is "the possibility of some relief for the action

complained of." *Booth*, 532 U.S. at 739. Requiring exhaustion of administrative remedies gives

prison officials the time and opportunity to address the inmate's complaint internally before

being haled into federal court. *Woodford*, 548 U.S. 89; *Fletcher v. Menard Corr. Ctr.*, 623 F.3d

1171, 1173–74 (7th Cir. 2011); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "Where

the prison provides an administrative grievance procedure, the inmate must file a grievance

raising a particular claim and pursue it through all available levels of appeal."[1] *Aziz v.*

*Pittsylvania Cnty Jail*, No. 7:11cv39, 2012 WL 263393, at *4 (W.D. Va. Jan. 30, 2012)

(Urbanski, J.). His failure to do so can be grounds for summary judgment on any unexhausted

claim. *Reynolds v. Doe*, 431 F. App'x 221, 222 (4th Cir. 2011) (per curiam); *Robertson*, 2014

WL 5801893, at *1.

---

[1] Exhaustion is an affirmative defense that the defendant must plead and prove on a claim-by-claim basis. *Jones*, 549 U.S. at 216. If the defendant makes that showing, the inmate then must produce evidence that administrative remedies were not actually "available" to him. *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (citing *Moore*, 517 F.3d at 725) ("[I]n order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure."); *Robertson v. Roberts*, No. 7:13cv560, 2014 WL 5801893, at *1, *1 n.1 (W.D. Va. Nov. 7, 2014) (Urbanski, J.).

4

A.       *Virginia's Offender Grievance Procedure*

The Virginia Department of Corrections ("VDOC") has a multistep procedure for

resolving most issues related to prison life. *See* Def. Br. in Supp. 2–4, ECF No. 23; VDOC

Offender Grievance Proc., Operating Proc. ("OP") 866.1, ECF No. 23-1. Generally, the inmate

must first try to resolve the problem informally by submitting an Informal Complaint to the

appropriate administrator.[2] *See* OP 866.1 § V ¶¶ B–F. If the inmate does not like the prison's

response, or if he does not get a response within fifteen days, he can then submit a Regular

Grievance to the Facility Unit Head. *See id.* § V ¶¶ B, C.

The inmate must file a Regular Grievance form within thirty days of the incident or

occurrence he wants resolved. *See* OP 866.1 § VI ¶ A.1. He can grieve one issue per form and

"must attach any required documentation," such as an Informal Complaint, showing that he tried

to resolve the issue informally. *Id.* § VI ¶ A.2. Grievances that do not meet those criteria are

promptly returned with a written explanation of why the form was rejected at intake. *See id.* § VI

¶ B. The inmate can appeal the intake decision within five days or resubmit the form as

instructed. *See id.*

The prison's Grievance Coordinator must review and resolve any properly filed

grievance within thirty days from the date it was received. *See id.* § VI ¶ C.1 ("Level I review").

If the Coordinator denies the grievance, or if she does not timely respond, the inmate can appeal

to "Level II," review by a regional administrator. *See id.* § VI ¶¶ C.2, C.5. Level II, which has a

---

[2] There is a separate, expedited process for addressing "situations or conditions which may
subject the [inmate] to immediate risk of serious personal injury or irreparable harm." OP 866.1
§ VII ¶ A. Emergency grievances "are not steps to exhaustion under the [VDOC's] exhaustion
policy," however. *Crayton v. Fleming*, No. 7:12cv276, 2012 WL 2527843, at *1, *1 n.1 (W.D.
Va. June 29, 2012) (Urbanski, J.) (citing OP 886.1 Attach. 1). The inmate still must complete the
Regular Grievance procedure in order to properly exhaust available administrative remedies. *See*
OP 866.1 Attach. 1 (July 1, 2013), *available at* http://vadoc.virginia.gov/About/procedures
/documents/800/866-1_A1.pdf.

twenty-day response deadline, is the final level of review for most issues related to prison life. *See* Conner Aff. 3, ECF No. 23-1; *see also* OP 866.1 § VI ¶ C.3. ("Level III review"). The inmate must "complete" the Regular Grievance procedure in order to properly exhaust available administrative remedies. *See* OP 866.1 Attach. 1 (July 1, 2013), *available at* http://vadoc.virginia.gov/About/procedures/documents/800/866-1_A1.pdf. Copies of all returned grievances, processed grievances, and appeals are kept in the inmate's grievance file. *See* OP 866.1 § VIII ¶ A.

B.      *Anderson's Grievances*

On January 24, 2014, Anderson submitted an Informal Complaint to the Unit Manager stating that he was put in segregation for no reason and that officials replaced his new clothes with used clothes when he returned to the general population. *See* Pl. Br. in Opp. Ex. at 21. On January 31, 2014, Laundry Manager T.A. LaCour responded that Anderson's "next clothing exchange date" was July 3, 2014, and that Anderson's request would not be considered until then. *Id.* On February 1, 2014, Anderson submitted another Informal Complaint to the Unit Manager stating that he was put in segregation "for not moving a 3rd time in one day" and that he received used clothes when he returned to the general population. Pl. Br. in Opp. Ex. at 23. On February 3, 2014, Grievance Coordinator Sandra Conner responded that the clothing issue had been addressed in another complaint. *See id.* Defendants aver that Anderson never filed a Regular Grievance about being strip searched. *See* Conner Aff. 3.

On January 27, 2014, Anderson submitted a Regular Grievance stating that he punctured his finger while climbing onto his top bunk three days earlier. *See* Compl. Ex. at 19; Conner. Aff. 19–20. He asked ACC to inspect all of the top bunks for rust, sharp edges, and other dangerous defects. *Id.* Two days later, Conner returned Anderson's form because he had not tried to

6

informally resolve the problem. *See* Conner Aff. 4, 19–20. Anderson raised the same issues in an

Informal Complaint submitted to Warden Woodson on January 31, 2014. *See* Compl. Ex. at 25.

Four days later, Brown responded that Anderson would "be moved to another cell on 2/4/14 so

[he would] not have to deal with . . . the sharp edges." *Id.* Defendants aver that Anderson did not

appeal Conner's January 29, 2014, intake decision or resubmit a Regular Grievance concerning

his injured finger. *See* Conner Aff. 3–4.

On February 4, 2014, Anderson submitted an Emergency Grievance stating that Brown

refused to inspect Anderson's bunk after he cut his finger on it. *See* Compl. Ex. at 21. He also

said that he had fallen off the top bunk and "almost busted [his] teeth on the floor." *Id.* That

afternoon, Lieutenant K. Simmons responded that this issue did not meet the "definition for an

emergency." *Id.* Simmons also explained that Anderson was not "on lower bunk status," but that

Brown would move him to a lower bunk if "Medical deems [it] necessary." *Id.* The same day

Anderson submitted an Informal Complaint to the Medical Administrator stating that he had

fallen face-first onto the floor because he had trouble climbing on and off of his top bunk. *See*

Compl. Ex. at 28. On February 5, Nurse K. Allen instructed Anderson to set up a "sick call to be

seen to request [a] bottom bunk or [the] floor." *Id.*

Anderson then submitted a Regular Grievance stating that Brown was biased against him

because he complained about cutting his finger on the faulty bunk and that he had been put in

segregation after he could not "move [a] 3rd time in 30 minutes because of [his] pelvic injury."

Compl. Ex. at 36; Conner Aff. 21–22. He asked to be transferred to another unit to accommodate

his pelvic and brain injuries. *See id.* On February 7, 2014, Conner returned Anderson's form

because it did not appear that he had tried to resolve the problem informally. Conner Aff. 4, 22.

She instructed him to attach any informal response before resubmitting a Regular Grievance on

these issues. *Id.* Defendants aver that Anderson did not appeal Conner's intake decision or resubmit his grievance with proper documentation. *Id.* at 4.

## C. Analysis

Defendants produced admissible evidence that ACC has a grievance review procedure and that an inmate must appeal any unfavorable response (or non-response) in order to complete the Regular Grievance procedure.[3] Conner Aff. 2–3; *see generally* OP 866.1. They aver that Anderson never submitted a Regular Grievance raising his strip-search claim and that he did not appeal or resubmit the two rejected Regular Grievances raising the segregation, top-bunk, and injured-finger claims. Conner Aff. 3–4, 19–20, 21–22.

That shifts the burden to Anderson to produce admissible evidence—not mere allegations or denials—establishing specific material facts genuinely in dispute. *See* Fed. R. Civ. P. 56(c), (e); *Scott*, 550 U.S. at 380; *Wilkins*, 751 F.3d at 220. Anderson concedes that he did not exhaust his available administrative remedies. *See* Pl. Br. in Opp. 3 ¶ 8. He argues that he did not have to exhaust any available remedies because there is no such requirement under 42 U.S.C. § 1983, he was in imminent physical danger, he could not comprehend the proceedings, and the relief sought was not available. *See id.* at 2–3, 5, 28; Compl. Ex. at 9 ¶ 11; Pl. Resp. 2, 7–9, ECF No. 26. Unfortunately, Anderson misreads the law that governs his case.

Many plaintiffs pursuing claims under 42 U.S.C. § 1983 do not have to exhaust administrative remedies before coming to court. *Nussle*, 534 U.S. at 523. The PLRA created a clear, sweeping exception to that general rule for "all inmate suits about prison life," including

---

[3] Anderson responds that "[t]here is no operating procedure when an accident occurs other than trying to be moved off the faulty [i]nstalled bunk that the VDOC shall be held liable." Pl. Br. in Opp. 2. That unsupported allegation is so "blatantly contradicted by the record . . . that no reasonable jury could believe it," *Scott*, 550 U.S. at 380. *See e.g.*, OP 866.1 §§ IV–VII; Compl. Ex. at 37. The court need not accept Anderson's version of that fact for purposes of ruling on Defendants' summary judgment motion. *Scott*, 550 U.S. at 380.

those brought under section 1983. *Id.* at 524, 532. It is settled law that Anderson must properly exhaust all available administrative remedies and that his "unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.

Anderson correctly notes that the PLRA's three-strikes rule, 28 U.S.C. § 1915(g), allows certain prisoners allegedly "under imminent danger of serious physical injury" to file suit before they otherwise might. *See* Pl. Br. in Opp. 5. Section 1915(g) excuses those particular prisoners from paying the entire civil filing fee up front; it does not excuse them—or any prisoner—from exhausting otherwise "available" administrative remedies.[4] *See Fletcher*, 623 F.3d at 1173, 1175; *McAlphin v. Toney*, 375 F.3d 753, 755 (8th Cir. 2004) (per curiam) (citing *Nussle*, 534 U.S. at 524); *Reynolds v. Stouffer*, No. DKC-13-0824, 2014 WL 576299, at *4 (D. Md. Feb. 11, 2014) (collecting cases).

There could be cases where an inmate in imminent physical danger has no duty to exhaust because "there are no administrative remedies for warding off such a danger" in his prison. *Fletcher*, 623 F.3d at 1173–74 (explaining that *Booth* "distinguished between a case in which there are remedies but none to the prisoner's liking . . . and a case in which there is no remedy"). But that is not the case here. VDOC has a procedure for quickly addressing "situations or conditions which may subject the [inmate] to immediate risk of serious personal injury or irreparable harm," OP 866.1 § VII ¶ A, and Anderson used that emergency procedure at least once. Compl. Ex. at 21. Moreover, Anderson claims imminent danger based on the faulty

---

[4] Further, the three-strike rule's imminent-danger "exception focuses on the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct." *Smith v. Wang*, 370 F. App'x 377, 378 (4th Cir. 2010) (per curiam) (quoting *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003)). Anderson alleges that ACC repaired his bunk in mid-March 2014—one month after Conner rejected his Regular Grievance raising that issue and one month before he filed this lawsuit. *See* Compl. Ex. at 13. Anderson has not produced any evidence that prison officials frustrated his efforts to pursue the claim administratively during that time. *See Graham*, 413 F. App'x at 663; *Moore*, 517 F.3d at 725.

9

Case 7:14-cv-00184-MFU-JCH   Document 36   Filed 02/10/15   Page 9 of 12   Pageid#: 258

condition of his bunk bed and a brain injury that he suffered in 2005, Pl. Br. in Opp. 5, but he has not asserted a claim for want of medical care for the brain injury. Neither situation shows that administrative remedies were unavailable to address the claims raised in his Complaint so as to excuse a failure to exhaust. *See Fletcher*, 623 F.3d at 1173.

Although Anderson alleges that ACC did not respond to his January 27, 2014, Regular Grievance, Compl. 3, he has not shown that he ever sought Level II review, as the prison's grievance policy required him to do. *See* OP 866.1 § VI ¶ C.5 (administrator's failure to timely respond at one level allows the inmate to appeal to the next level); Conner Aff. 1–4. Thus, it is undisputed that Anderson did not properly exhaust his top-bunk and injured-finger claims. *See Davis v. Stanford*, 382 F. Supp. 2d 814, 819, 819 n.1 (E.D. Va. 2004).

The PLRA requires exhaustion of all available administrative remedies even where the inmate believes exhaustion is futile. *Booth*, 532 U.S. at 741 n.6; *Reynolds*, 431 F. App'x at 222. There is no exception for inmates seeking a particular remedy that prison officials cannot grant, such as damages. *See Booth*, 532 U.S. at 736–41. Nor is there an exception for inmates who allegedly cannot understand the available procedures. *Cf. Graham*, 413 F. App'x at 663 n.3 (rejecting inmate's argument that a remedy should be considered "available" only when "'a similarly situated individual of ordinary firmness would have deemed the grievance procedures available'" (quoting *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) (internal brackets omitted)). Further, Defendants produced evidence that "[a]ssistance should be made available" to inmates who cannot complete Regular Grievance forms themselves. OP 866.1 § VI ¶ A.2. Defendants aver, and Anderson concedes, that he never submitted a Regular Grievance raising his strip-search claim and that he never appealed Conner's decision rejecting the February 5, 2014, Regular Grievance concerning Anderson's segregation claim. *See* Conner Aff. 3–4, 21–22.

The court may consider those facts undisputed for purposes of resolving Defendants' motion for summary judgment. Fed. R. Civ. P. 56(c), (e).

## IV. Conclusion

The Defendants have put forth evidence showing that Anderson did not follow the sequence of submitting an informal complaint then a regular grievance or appealing a decision on a regular grievance, as required by VDOC's procedure. Anderson concedes that he did not properly exhaust available administrative remedies on any of his claims. That undisputed fact entitles Brown and Oliver to a judgment as a matter of law. *See Reynolds*, 431 F. App'x at 222; *Robertson*, 2014 WL 5801893, at *1. Therefore, I respectfully recommend that the presiding District Judge **GRANT** the Defendants' motion for summary judgment, ECF No. 22, and **DISMISS** this case without prejudice.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record and to the *pro se* Plaintiff.

11

ENTER: February 10, 2015

Joel C. Hoppe
United States Magistrate Judge

12