IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM LEE ANDERSON, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:14cv00184 |
| v. ) | |
| ) | |
| J.L. BROWN, et al., ) | By:  Michael F. Urbanski |
| ) | United States District Judge |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

Pro se plaintiff William Lee Anderson, II, brings this action pursuant to 42 U.S.C. § 1983, alleging a violation of various constitutional rights. Anderson's allegations stem from a series of events beginning with his assignment to a top bunk, which Anderson claims his medical issues prevent him from getting into and out of safely. He asserts his request for a new bunk led to him being placed in segregation and strip searched in the midst of a panic attack and that, when released from segregation, he was denied his previously issued boots and clothing and placed again in a top bunk, on which he injured his finger because the bunk was improperly installed and maintained.

Defendants moved for summary judgment, arguing Anderson failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Anderson filed a brief in opposition, and this matter was referred to United States Magistrate Judge Joel C. Hoppe for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). In a report and recommendation issued on February 10, 2015, the magistrate judge recommended the court grant summary judgment in defendants' favor, finding evidence that Anderson failed to follow the Virginia Department of Corrections' grievance procedure. The report gave notice to the parties that they had fourteen days within which to file any objections. No

objections were filed in that time period, and by Order entered March 4, 2015, the court adopted the magistrate judge's recommendation, granted summary judgment in favor of defendants, and dismissed this case.

Nine days after this case was dismissed, Anderson filed objections to the magistrate judge's report and recommendation (Dkt. # 38) and, along with it, his own motion for summary judgment (Dkt. # 39). On March 18, 2015, Anderson filed a letter asserting his objections were filed late because they were sent to the wrong address (Dkt. # 40). Two days later, he filed a motion for reconsideration of the court's March 4th Order dismissing the case (Dkt. # 41). Five days after that, Anderson filed a notice of appeal with the Fourth Circuit.[1]

Given the fact that Anderson is proceeding pro se, the court will **VACATE** its March 4th Dismissal Order and consider Anderson's objections.[2] Finding they have no merit, however, the objections will be **OVERRULED**, the magistrate judge's report and recommendation **ADOPTED in its entirety**, Anderson's motion for summary judgment **DENIED as moot**, and this case **DISMISSED**, for the reasons set forth below.

I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

---

[1] Given the pending motion for reconsideration, however, Anderson's notice of appeal becomes effective upon entry of an order disposing of the motion. See Dkt. # 45.

[2] Anderson's motion for reconsideration (Dkt. # 41) cites a mailing error as the reason for the late filing of his objections, reiterates arguments raised in his late-filed objections, and, in fact, attaches a similar version of his objections to the report and recommendation. Because the court is considering Anderson's objections, the motion for reconsideration will be **DENIED as moot**.

2

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012) (citing Veney v. Astrue, 539 F.Supp.2d 841, 845 (W.D. Va. 2008)); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

## II.

In his objections, Anderson argues the provisions of the PLRA do not apply because he was in imminent danger of serious bodily injury, citing 28 U.S.C. § 1915(g); that the PLRA does not require Anderson to exhaust his administrative remedies because he was denied his due process right to pretrial proceedings conducted with "telecommunications technology" pursuant to 42 U.S.C. § 1997e(f); and that § 1983 does "not require exhaustion of state remedies." Pl.'s Obj., Dkt. # 38. All of these arguments were raised by Anderson on summary judgment and were properly addressed by the magistrate judge in his report.

3

Anderson is correct that, "[a]s a general rule, plaintiffs proceeding under § 1983 need not exhaust state administrative remedies before filing suit." Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d 674, 676 (4th Cir. 2005). However, the PLRA "reversed that rule as to prison-condition lawsuits," such as the instant case, brought pursuant to § 1983. Id. Indeed, the PLRA requires inmates to exhaust "such administrative remedies as are available" before bringing any action pursuant to § 1983 with respect to prison conditions. 42 U.S.C. § 1997e(a). Exhaustion is mandatory, XYZ Correctional Health, 407 F.3d at 677, and gives prison officials a full and fair opportunity to adjudicate an inmate's claims before being subject to litigation in federal court, Woodford v. Ngo, 548 U.S. 81, 89-90 (2006). Inmates are required to use all available grievance steps and do so properly. Id. at 90. Exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.

The magistrate judge correctly concluded in this case that Anderson did not properly exhaust his administrative remedies through all levels of review set forth in the Virginia Department of Corrections' Operating Procedure 866.1 concerning inmate grievances. See Defs.' Summ. J. Br., Dkt. # 23-1. Anderson does not appear to contest this fact.[3] Rather, he argues he was not required to exhaust his administrative remedies because he was in serious danger of imminent bodily injury, citing 28 U.S.C. § 1915(g). As the magistrate judge explained, "Anderson correctly notes that the PLRA's three-strikes rule, 28 U.S.C. § 1915(g), allows certain prisoners allegedly 'under imminent danger of serious physical injury' to file suit before they otherwise might,'" and avoid paying the

---

[3] The court notes that in the objections attached to Anderson's motion for reconsideration, he states defendant Brown refused to answer any of Anderson's request forms. See Mot. for Reconsideration, Dkt. # 41, at 13. This is simply not borne out in the record. There is no requirement that Brown himself respond to Anderson's grievances, and the all of the grievance and complaint forms in the record contain some sort of response from prison staff, except for a February 4, 2014 regular grievance relating to Anderson's request for new clothing and a pillow following his time in segregation. See Pl.'s Resp. Br., Dkt. # 27-1, at 22. There is no evidence that Anderson ever appealed this grievance—or any other grievance to which a response was given— to Level II as required by VDOC Operating Procedure 866.1. See Defs.' Summ. J. Br., Dkt. # 23-1.

4

necessary filing fee. Report & Recommendaiton, Dkt. # 36, at 9. This does not excuse prisoners from exhausting their available administrative remedies, however. "[T]here is no exception [to the PLRA's administrative exhaustion requirement] for prisoners who allege 'imminent danger' in order to be excused from having to pay the entire filing fee at the time the suit is brought. Imminent danger excuses *only* that, and not the duty to exhaust as well." Fletcher v. Menard Correctional Center, 623 F.3d 1171, 1173 (7th Cir. 2010) (internal citation omitted) (emphasis in original).[4]

Anderson also argues that he was not required to exhaust because he was denied his right to pretrial proceedings under the PLRA, citing 42 U.S.C. § 1997e(f). This section of the PLRA provides:

> (1) To the extent practicable, in any action brought with respect to prison conditions in Federal court pursuant to section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility, pretrial proceedings in which the prisoner's participation is required or permitted shall be conducted by telephone, video conference, or other telecommunications technology without removing the prisoner from the facility in which the prisoner is confined.
>
> (2) Subject to the agreement of the official of the Federal, State, or local unit of government with custody over the prisoner, hearings may be conducted at the facility in which the prisoner is confined. To the extent practicable, the court shall allow counsel to participate by telephone, video conference, or other communications technology in any hearing held at the facility.

42 U.S.C.A. § 1997e(f). Contrary to Anderson's assertions, this provision does not give him a right to a pretrial hearing; rather, it provides that "pretrial proceedings in which the prisoner's participation is required or permitted" shall be conducted via "telecommunications technology." Id.

---

[4] Additionally, as the magistrate judge notes, VDOC has a procedure for addressing conditions which may subject an inmate to immediate risk of personal injury or irreparable harm. Report & Recommendation, Dkt. # 36, at 9. Anderson used that emergency grievance procedure at least once on February 4, 2014. See Compl., Dkt. # 1-1, at 21. The response to that emergency grievance suggests Anderson's complaint did not qualify as an emergency. Id. In any event, emergency grievances are not steps to exhaustion under the VDOC policy.

5

There have been no such pretrial proceedings in this case, and nothing about this section of the PLRA excuses Anderson's failure to exhaust his administrative remedies as required by § 1997e(a).

Anderson further contends that because he was not warned of the dangerous condition of his "faulty installed bunk," his injury is considered an accident, and "there is 'no grievance procedure' when their [sic] is 'no grievance,' when an 'accident has occurred,' other than reporting his to officials to get repaired as did plaintiff here did." Pl.'s Obj., Dkt. # 38, at 3. He raised a similar argument at the summary judgment stage, which the magistrate judge dismissed. See Report & Recommendation, Dkt. # 36, at 8 n.3. Plainly, the evidence establishes that there were grievance procedures available to Anderson for matters "relating to conditions of care or supervision within the authority of the DOC which affect [him] personally," see VDOC Operating Procedure 866.1, Dkt. # 23-1 at § IV. M., and that Anderson knew about and took advantage of those procedures. The fact that the alleged condition of his bunk may not have been foreseeable to Anderson before he injured his finger does not excuse his failure to properly exhaust the administrative remedies available to him once he became aware of bunk's condition and sustained the injury.[5] Exhaustion of administrative remedies is mandatory in cases like this concerning prison conditions, XYZ Correctional Health, 407 F.3d at 677, and Anderson's unexhausted claims cannot be brought in court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)).

Finally, there is some suggestion in Anderson's objections that he suffers from certain physical and mental impairments that should excuse his failure to exhaust administrative remedies. He cites to the "disability provisions" of Virginia Code § 8.01-229, which deals with tolling of the

---

[5] Anderson raises a series of questions in his objections directed at how he is expected to file a grievance before an accident occurs. Pl.'s Obj., Dkt. # 38, at 4. He is not. Rather, he is required to grieve any issue related to prison conditions—in this case, the alleged dangerous condition of his bunk and resulting injury—within a certain amount of time after those issues manifest. To the extent these questions posed by Anderson are intended to suggest that following the grievance procedures would have been futile in this case, courts have rejected similar arguments made in an attempt to excuse a failure to exhaust. See Reynolds v. Doe, 431 F. App'x 221, 222 (4th Cir. 2011) (per curiam) ("Exhaustion of administrative remedies is mandatory, even where the inmate claims that exhaustion would be futile." (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001))).

statute of limitations in causes of action arising out of Virginia law and has no bearing whatsoever on Anderson's failure to exhaust his administrative remedies in this case. He also attaches to his objections a single page of a five page medical record dated February 10, 2005, which appears to show some diagnostic findings related to a hospital admission after Anderson was found unresponsive. Pl.'s Obj., Dkt. # 38-1.[6] This document, dated nine years prior to the filing of this lawsuit, does not establish that grievance procedures were unavailable to Anderson or that he was unable to take advantage of them. Indeed, the evidence establishes that Anderson filed informal complaints on January 27 and 30, 2014, and on February 1 and 4, 2014; that he filed regular grievances on January 27 and February 4 and 5, 2014; and that he filed one emergency grievance and three "Offender Requests," all related to the allegations he raises in this lawsuit. Plainly, grievance procedures were available to him and Anderson took advantage of them; he just failed to do so in the manner required by the VDOC Operating Procedure 866.1. There is simply no basis for Anderson's assertion that he has a disability that somehow prevented him from exhausting his administrative remedies in this case.

### III.

For these reasons, Anderson's objections to the report and recommendation will be **OVERRULED,** the report and recommendation **ADOPTED in its entirety**, and this matter will be **DISMISSED** and **STRICKEN** from the active docket of the court.

An appropriate Order will be entered.

Entered: April 13, 2015

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

[6] Additional pages to this 2005 medical record are attached to Anderson's response to defendants' motion for summary judgment. See Pl.'s Resp. Br., Dkt. # 27-1.